Common Pleas Court of Summit County.

LIBERTY INDUSTRIAL BANK V. MAURICE L. KERLAND, ET AL.

*J. Edward Schenz,* for plaintiff.
*D. M. Sifling,* for defendant.

WANAMAKER, J.

This action is brought by a plaintiff, resident of Denver, Colorado, a corporation doing a banking business. The mortgagee of a truck and trailer for money loaned upon said truck and trailer was secured by a mortgage only recorded according to law in the state of Colorado. The defendant, M. L. Kerland, is a resident of Denver, Colorado, and the mortgagor, the defendant International Harvester Company of America, is a resident of Akron, Ohio, and engaged in the business of repairing and reconditioning automotive vehicles.

The dispute between the parties arises upon an action of the mortgagee to foreclose the mortgage on the truck and trailer, it being brought in this jurisdiction by reason of the fact that the truck and trailer is within the jurisdiction, being held by the International Harvester Company for repair and reconditioning work requiring labor and material for that purpose. Defendant's claim originally was on a mechanic's common law lien, and later reduced to a judgment *in rem* by an attachment against the property of Kerland, a non-resident, in which action a judgment was rendered and a levy made upon said truck and trailer in the hands of the defendant International Harvester Company. Defendant International Harvester Company has never surrendered possession of the property.

The plaintiff seeks the marshalling of the liens against the truck and trailer and seeks the pronouncement of this court to the effect that the chattel morgage lien is a first lien and that the lien of the International Harvester Company for labor and material furnished the said truck and trailer is secondary to the lien of the plaintiffs. The plaintiff relies solely upon the chattel mortgage filed in the state of Colorado in accordance with the laws of the state of Colorado. The defendant International Harvester Company relies solely upon its lien originating with the common law labor and material lien and the court is required to determine the equities between these respective claims.

The maxim that equity follows the law is an old adage, but not conclusive, for the purpose of equity is to relieve against the severities of the law and to provide against the inadequacies of the law.

While numerous decisions have been rendered upon this subject in past years the court must recognize the growth of changing conditions and that changes have continuously occurred since the writing of these decisions to the point where conditions and customs of human behavior have become impelling to the court's conscience. The plaintiff relies primarily as a basis to its right in this jurisdiction upon the decision of the Ohio Supreme Court in *Metropolitan Securities Company v. Orlow, et al.,* 107 Ohio St.,

583, decided almost eleven years ago, May 15, 1923, and takes further reliance on that decision because of its affirmation in *Auto Top Company v. American Finance Company,* 124 Ohio St., 169, and decided June 17, 1931.

At its inception a rule of law is based upon reason and it has been frequently said that when the reason for the rule ceases to exist the rule should cease to exist. That is not, however true in an instance where the rule has been in such general usage and familiarly as to have been held in mind by the public generally over a long period of time and have occasioned many business transactions and courses of conduct to have been governed thereby. A rule established in that manner, however, only becomes dignified by virtue of its long period of existence.

A new doctrine, therefore, of comparatively recent years may always be questioned in accordance with the soundness of the logic and of the reason in the opinions supporting it. It is not improper, therefore, for this court in the determination of the weight of the authority supporting the contention of the plaintiff to first make the observation that the original decision of the Supreme Court of Ohio had a concurrence only of four of its members and that a dissenting opinion was written with three members of the court concurring in the dissent.

It would appear, therefore, that there was not an overwhelming soundness of reason and logic advanced for the majority opinion. While it continues to be the law of this jurisdiction supported by affirmation in the *Auto Top* case (cited *supra*) yet the latter case contained a very brief opinion which does not disclose that the facts in that case were any different from the facts in the original case. The impressiveness of these authorities should be limited to the particular set of facts then before the court.

The facts in the case now before the court, however, are different, and materially different in this court's opinion, from the facts that were before the Supreme Court for consideration in the *Metropolitan* case.

Assuming the correctness of the decision of the Supreme Court as applied to the facts in the case then before it those

facts are definitely distinguished from these facts by the very words of Chief Justice Marshall when he stated the analogy to admiralty law liens as applicable to the case then under consideration. In his opinion on page 593 it is written:

"Some analogy may be drawn between maritime liens and liens on personal property devoted to and being employed in public service but no possible analogy can be drawn between maritime liens and liens upon a *pleasure* automobile."

And further the second sentence following:

"There is every reason why a vessel should be promptly repaired and proceed upon its voyage while on the other hand a *pleasure* automobile not only earns nothing but affords greater security to the mortgagee by remaining idle." (Italics, the writer's)

It will thus be noted distinctly that the reason for the refusal of the court to accept the analogy of the equity of maritime liens is based upon the theory that a vessel is a productive piece of property engaged in commercial business requiring repairs to permit it to be productive for the purpose for which it was intended, the primary purpose of which was to provide a yield of revenue with which to satisfy the indebtedness against the vessel.

The court thereupon distinguished the personal property in that case by repeatedly referring to it as a *pleasure* automobile and further urging the fact that its use diminished its value as security and yielded nothing to assist in accomplishing the extinguishment of the obligation placed against it. The court further not only ignored the fact that the repair of an automobile enhances its value but even by inference at least suggests that the repair of an automobile is to be presumed to be an excessive charge and to exceed by so large a degree the enhancement of the value of the article as to make what little, if any, enhancement would result, something not worth while considering, and the court upon that theory refused to consider it as of any weight in arriving at its decision.

There is a difference of the facts in that in the cases in which the Supreme Court of Ohio laid down the rule, the mortgages were recorded in Ohio and the repairs done in Ohio, one case in the same county and in the other, adjoining counties, while in the case before this court for consideration the only place of recording of said mortgage was in the state of Colorado while the work was done in the state of Ohio.

In one other respect the facts of this case and of the Metropolitan case differ. The mortgage in the Metropolitan case provided that the mortgagor should

"take the best care of the property and keep it in first-class condition and order at all times at the expense"
of mortgagor. In this case the mortgage provides
"the mortgagor covenants and agrees to repair any injuries to said personal property and to keep the same in good order and repair"

at the expense of the mortgagor and without expense to the mortgagee.

In this case there is a commercial truck and trailer engaged in interstate traffic. In the case decided by the Supreme Court there was a pleasure automobile.

There are certain fundamental rules that should be recognized in the consideration of this case the same as any other case. As between two innocent persons before the courts the one whose conduct is most to blame for making it possible for the parties to suffer is the one who should suffer most. Equity always prefers the vigilant. Equity and law always prefer labor and material claims in preference to return upon the investment and, further, equity and law will always protect one who has enhanced a property, at least to the extent of his actual enhancement.

The common law lien of the artisan is a law that has been recognized in every jurisdiction from the inception of the common law and it is a recognized rule of construction that the common law still prevails in the absence of express statutory repudiation or repeal. Even statutes construed as being declaratory of the common law are not construed as restricting the common law unless they do so expressly.

The primary purpose of courts is to do justice and the growing tendency to be reckless of a person's rights by not requiring actual notice and substituting therefor constructive notice is a tendency away from actual dispensing of justice and should not be encouraged by the courts beyond the limits actualy required by the express enactment of the Legislature. There is no more dangerous tendency than indulging in fictions of the law.

The plaintiff urges upon the court that because a mortgage was filed in Denver, Colorado, it is notice of a binding character upon every artisan in the forty-eight states in the Union. In other words, the courts of the sovereign state of Ohio created with a jurisdiction within the limits of the state of Ohio and for the protection of the rights of the people within the state of Ohio, it is now urged by the fiction of constructive notice, should hold that all Ohio artisans are charged with notice of the filing of this mortgage by an investor of money in Denver, Colorado, whose claim against the property was for security only and that before any work or labor can be furnished for the repair of the truck and trailer that all the records of all the counties of all the states of the Union must be carefully scrutinized to protect the Ohio artisan and secure that he be paid his compensation for the enhancement of the value of the property resulting therefrom.

This is indeed so impractical a requirement as to be a requirement impossible of fulfillment and the extension of the rule of constructive notice to such a degree would be indulging in a fiction of law so absurd as to require the denial of the rights not only of the artisan but of the truck operator who might desire immediate repairs to be commenced upon a car during which he may arrange to secure the money with which to pay for it. In other words, such a rule for safety sake would require all artisans to refuse the extension of any credit by way of proceeding with the work until payment therefor was made in advance.

Such a rule would further give a paramount right to the one who, careless of his own rights and the rights of others, permitted the owner to possess a mortgaged truck and to

operate the same on the highways restricting him only by terms of a contract in his operation of it to stay within the limits of the state in which the mortgage is filed without giving any actual protection to others outside the state. One who has thereby made it possible for an artisan in good faith to enhance the value of the security should be the last one to be heard to complain about a situation which he himself has made possible.

It is true that the mortgage specifically provides that the mortgagee should in no way be responsible for the repairs and further that the automobile shall not be removed from the state without the consent of the mortgagee but how are those limiations of the contract between the mortgagor and the mortgagee binding or effective as to the artisan who knows nothing about them and who cannot with reasonable diligence find out anything about them?

Allowing the artisan's lien does not even violate the terms of the contract between the mortgagor and the mortgagee. The only thing the terms of the contract protect the mortgagee against is his personal responsibility or liability for repairs and there is no personal liability or responsibility upon the mortgagee by allowing this lien of the artisan. The contract requiring the mortgagor to repair the automobile and the limiation of any responsibility of the mortgagee by reason of the requirement simply protects the mortgagee from any personal responsibility that might arise by any claim of authorization to the mortgagor by the mortgagee because of the terms of the mortgage requiring the repairs to be done. This protection against personal liability for repairs that might exceed the value of the security was never intended and should not be construed as depriving the artisan of his right to look to the fruits of his labor as security for the payment thereof. The responsibility of the mortgagor to the mortgagee under the terms of the contract still exist and the mortgagee certainly having chosen his debtor and having placed in the hands of the debtor the means whereby a situation of this nature could arise should now be relegated to his action against the debtor he selected which

had not been extinguished. If that right is supposed to be financially worthless that is extremely unfortunate but a misfortune which the mortgagee could have much more easily guarded against than could the artisan. The limitation of the mortgage preventing the taking of the automobile out of the state without permission certainly in no way can be construed as limiting the rights of a person not a party to the contract.

In recent years and with increasing acceleration the operation of trucks and trailers and passenger automobiles for commercial purposes and for public service has caused them to be recognized as public utilities and the analogy of the vessel sailing the seas becomes more pronounced each year with the transportation of goods and passengers by trucks and busses visiting various cities of various states with even a greater freedom than that with which the vessels visit the ports of the seven seas. In fact, every reason given by Marshall, C. J., in the Metropolitan case on page 593 differentiating the facts of a *pleasure automobile* from that of a commercial vessel and finding the absence of the analogy in that case supports the conclusions reached in this case.

Paraphrasing that language

'a truck and trailer requiring repairs at a foreign city before it could proceed upon its journey would not only be a total loss if it did not proceed but the cargo would also be lost by the damage or delay. There is every reason why a commercial truck and trailer should be promptly repaired and proceed upon its journey.'

It would be a most astonishing situation if transcontinental and interstate truck and bus traffic were to be endangered by long interruptions necessitated because of the time required upon occasion of repair to have the vehicle laid up before any artisan could work upon it until he had investigated all of the records of the forty-eight states of the Union.

The automobile is and has been replacing rail transportation and it has long since ceased to be a luxury and must be by the courts recognized as a necessity. In the instant

case, although the record is silent upon some of the matters, it is the duty of the court at all times to presume in the absence of evidence to the contrary that men have acted honestly, legitimately, reasonably, and in the ordinary course of business.

Although there is no evidence in the record to disclose how this truck and trailer came here it is not a violent presumption to assume that it came here in the capacity and the purpose for which it was designed and built; transportation of goods and materials. By virtue of some accident the evidence shows that the repairs were necessary in this foreign "port." They were made. In the absence of evidence to the contrary it must be presumed to have been reasonably made and a reasonable amount charged therefor. In the absence of evidence to the contrary it must be presumed within the rule of reason that the enhancement of its value was substantially equivalent to the outlay of money required. Otherwise, reasonable men would not have authorized it and reasonable men would not have completed it.

To this court it appears that every rule of reason and dictation of conscience should support the priority of the lien of the artisan and judgment is rendered accordingly.

Journal entry shall be prepared with exceptions granted.